848 So.2d 1209 (2003)
STATE of Florida, Appellant,
v.
Frank MITCHELL, Appellee.
No. 1D03-1518.
District Court of Appeal of Florida, First District.
July 3, 2003.
Charlie Crist, Attorney General; Thomas H. Duffy, Assistant Attorney General, Tallahassee, for Appellant.
Nancy A. Daniels, Public Defender, Second Judicial Circuit, and Robert S. Friedman, Assistant Public Defender, Tallahassee, for Appellee.

ON MOTION FOR REVIEW OF ORDER TO STAY
PER CURIAM.
Appellee, Frank Mitchell, requests review, pursuant to Florida Rule of Appellate Procedure 9.310(f), of the trial court's order denying appellee's motion to vacate the automatic stay provided for in Florida Rule of Appellate Procedure 9.310(b)(2) and seeks the reversal of such. In his motion for review, appellee contends that the trial court erred in denying his motion to vacate the stay because, while the commitment of sexually violent predators under the Jimmy Ryce Act has been deemed to be civil in nature, such commitment during the pendency of the State's appeal constitutes a serious deprivation of a defendant's liberty interests. Concluding that the automatic stay provision set forth in rule 9.310(b)(2) is applicable to civil commitment proceedings brought under the Jimmy Ryce Act when the State appeals the lower court's dismissal of the *1210 petition seeking commitment, we affirm the trial court's order.
In the instant case, the State sought to civilly commit appellee as a sexually violent predator pursuant to what is commonly known as the Jimmy Ryce Act, sections 394.910-394.931, Florida Statutes (2000) (entitled "Involuntary Civil Commitment of Sexually Violent Predators"). The trial court found that there was probable cause to believe that appellee was a sexually violent predator. Thereafter, the trial court dismissed the proceeding for lack of jurisdiction and the State filed a notice of appeal. Appellee subsequently filed a motion with the trial court to vacate the automatic stay under rule 9.310(b)(2). However, the trial court denied the motion, stating that the issue presented was one of first impression in Florida and determining that it was unable to find that the State had no likelihood of success on appeal.
Rule 9.310(b)(2) provides that "[t]he timely filing of a notice shall automatically operate as a stay pending review, except in criminal cases, when the state, any public officer in an official capacity, board, commission, or other public body seeks review...." The statute and the case law construing the Jimmy Ryce Act make it clear that the commitment proceedings under the Jimmy Ryce Act are civil in nature. See, e.g., Westerheide v. State, 767 So.2d 637, 648 (Fla. 5th DCA 2000) (holding that the Jimmy Ryce Act is civil in nature and that confinement is for treatment and the protection of the public, not punishment), approved by 831 So.2d 93 (Fla.2002). Moreover, section 394.9155(1), Florida Statutes (2000), provides that the Florida Rules of Civil Procedure apply to all civil commitment proceedings for sexually violent predators unless otherwise specified. It has also been observed that automatic stays are available only in civil cases and that "[s]ubject to the exception for criminal cases, rule 9.310(b)(2) makes no distinction as to the type of case in which a public party is entitled to an automatic stay." See Philip J. Padovano, Florida Appellate Practice § 12.5 at 184 (2003 ed.). Although, the automatic stay provision has been held inapplicable to discretionary review proceedings, see, e.g., State, Department of Health and Rehabilitative Services v. E.D.S. Federal Corporation, 622 So.2d 90 (Fla. 1st DCA 1993) and City of Miami v. Arostegui, 616 So.2d 1117 (Fla. 1st DCA 1993), in the instant case, the State has the right to appeal the final order of dismissal. Accordingly, because the commitment of sexually violent predators has been held to be civil in nature and because rule 9.310(b)(2) applies to civil cases, we conclude that rule 9.310(b)(2) is applicable to this appeal.
In State v. Kobel, 757 So.2d 556, 557 (Fla. 4th DCA 2000), the State sought a writ of certiorari to review a trial court order that directed the release of a detainee under the Jimmy Ryce Act. The Fourth District Court of Appeal stayed that portion of the trial court's order that required the detainee's release and issued an order to show cause. Id. at 559. To maintain the status quo, the court continued the stay on the condition that an adversarial hearing be held as previously scheduled. The court set forth that once the finding of probable cause had been made, the trial judge was required to order that the detainee "`be maintained in custody and held in an appropriate secure facility for further proceedings in accordance' with the [Jimmy Ryce] Act, Part V of Chapter 394, Florida Statutes (1999). § 394.9135(3), Fla. Stat. (1999)." Id. at 563.
Even if we were to determine that the automatic stay provision does not apply to this appeal, Kobel suggests that the detainee still would not be eligible for release *1211 based on the mandatory provision of section 394.915(5), Florida Statutes, which sets forth that after a court finds probable cause, "the person must be held in custody in a secure facility without opportunity for pretrial release or release during the trial proceeding." Here, the trial court made a finding of probable cause that appellee was a sexually violent predator. Although the trial court later dismissed the commitment petition, the effectiveness of that order is not final because the State has taken this appeal.
As observed in Meadows v. Krischer, 763 So.2d 1087, 1091 n. 4 (Fla. 4th DCA 1999), this case demonstrates the difficulty courts have had in fashioning procedures on a case by case basis to implement the Jimmy Ryce Act and:
underscore[s] the need for the Florida Supreme Court to appoint an appropriate committee to fashion comprehensive procedural rules for the implementation of substantive requirements of the Jimmy Ryce Act for those situations where the application of the Rules of Civil Procedure would be impracticable and where the statute is silent as to procedure.
As appellee continues to be held in detention, we sua sponte expedite consideration of this case on its merits.
Because we share the serious concerns for due process expressed in the dissent, we certify the following question to the Florida Supreme Court to be of great public importance:
WHETHER THE STATE IS ENTITLED TO THE BENEFIT OF THE AUTOMATIC STAY PROVISION OF RULE 9.310(b)(2) ON APPEAL IN A CIVIL COMMITMENT PROCEEDING BROUGHT PURSUANT TO PART V OF CHAPTER 394, FLORIDA STATUTES, WHEN THE TRIAL COURT HAS DISMISSED THE PETITION SEEKING COMMITMENT.
AFFIRMED; QUESTION CERTIFIED.
VAN NORTWICK and LEWIS, JJ., concur.
PADOVANO, J., dissents with written opinion.
PADOVANO, J., dissenting.
I do not think that the automatic stay provision in rule 9.310(b)(2) can be applied in an appeal from an order dismissing a petition for involuntary commitment under the Jimmy Ryce Act, because the effect of the stay in such a case would be to detain a person in custody without due process of law. For this reason, I am unable to join in the majority's decision to keep the stay in place in the present case.
The power to detain an individual for involuntary civil commitment is subject to certain well-defined constitutional limitations. As the Supreme Court explained in Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), the "freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." This view is reflected in other Supreme Court opinions, as well. Earlier, the Court said, "[i]t is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Jones v. United States, 463 U.S. 354, 361, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983) (quoting Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). These statements plainly illustrate that we are dealing here not only with the applicability of a procedural rule, but also with an important issue of constitutional law.
Statutes authorizing civil commitment of sexually violent predators have been upheld primarily because they require a judicial *1212 finding that a person suffers from a condition that makes him dangerous to others. For example, in Kansas v. Hendricks, 521 U.S. 346, 357-358, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the Court concluded that the statute at issue did not offend the Due Process Clause, because it "requires evidence of past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated." The Florida Supreme Court has rejected a due process challenge to the Jimmy Ryce Act for the same reason. See Westerheide v. State, 831 So.2d 93, 106 (Fla.2002). The constitutional objections to commitment can be overcome, but only if the government complies with the applicable procedures and evidentiary standards, and if the court makes the findings of dangerousness required by the statute.
In the present case there is no judicial finding that could be used to support the appellee's continued detention. The appellee has completed the sentence he was serving when the petition for involuntary commitment was filed.[1] His detention may have been justified at one time by the trial court's finding of probable cause in the civil commitment proceeding, but that finding has now been undermined by the court's final order dismissing the case. The appellee is now being held in custody solely on the authority of the stay imposed by rule 9.310(b)(2).
This stay is not based on a finding of dangerousness, or upon any judicial finding for that matter. Rather, the stay has been imposed automatically by operation of law, merely because the state has chosen to appeal the dismissal of its petition. I believe that confinement under the Jimmy Ryce Act must rest on something much more substantial than the effect of a mechanical rule that goes into effect by the unilateral action of the state.
The majority takes the view that the automatic stay effectively restores the trial court's earlier finding of probable cause. That is a logical way to construe the effect of the rule, but it does not entirely resolve the constitutional problem presented by this case. Section 394.916(1), Florida Statutes (2002), provides that "[w]ithin thirty days after the determination of probable cause, the court shall conduct a trial to determine whether the person is a sexually violent predator." The imposition of the automatic stay would extend this time period indefinitely. Although the court has expedited the appeal, that is not an adequate remedy for a person who is detained without authority. This is a plenary appeal from a final order. Despite our best efforts to expedite the decision, we could not ensure that the appellee will not be held beyond the thirty-day time limit set by section 394.916(1).
The statutory time period for which a person can be held in custody pending trial on a petition for involuntary commitment is not a mere procedural requirement. Except in the limited circumstances listed in the statute itself, the time period cannot be altered or extended. In State v. Goode, 830 So.2d 817, 823 (Fla.2002), the Florida Supreme Court held that the thirty-day time limit in section 394.916(1) is mandatory. The court explained that "based on the importance of the obvious liberty rights at stake," the Legislature must have intended that there should be "scrupulous compliance" with the thirty-day limit. Id. at 826.
The Jimmy Ryce Act contains no provision addressing the rights of the respondent during an appeal by the state. The *1213 Legislature may have overlooked the possibility of an appeal by the state, but it is just as likely the Legislature believed that a person who is exonerated in the trial court should not be in custody at all. I am not certain of the Legislature's intent or lack of intent, but I am certain that the courts should not attempt to fill in the blank by applying a mechanical rule of procedure that would allow for a detention beyond the period of time authorized by statute. The constitutional validity of the involuntary commitment process depends on the requirements of the statute. It follows that the courts should not deviate from the statute by extending the allowable time for detention.
My disagreement with the majority is based entirely on constitutional grounds, but it is also worth mentioning that rule 9.310(2)(b) was never meant for a situation like this. The original purpose of the rule was to enable the state to maintain the status quo while avoiding the unnecessary expense of providing a supersedeas bond. A litigant who obtains a money judgment against the state should have no fear that the judgment will be uncollectible if the state loses the appeal. The state will always be subject to the jurisdiction of the court and a bond is not required because the state is a solvent litigant. These considerations, which prompted the adoption of the automatic stay provision in rule 9.310(b)(2), are not even remotely applicable to an involuntary commitment proceeding. In such a case the stay would not preserve the status quo; it would actually change it. A person who could only be held for thirty days under the statute would be held, by the operation of the stay, for an indefinite period of time until the appeal is resolved. That is what occurred in the present case.
Furthermore, if rule 9.310(b)(2) can be applied here, it would put the state in an even better position than it would have been in had it appealed the dismissal of a criminal charge. Rule 9.140(h)(3) provides that an incarcerated defendant charged with a bailable offense is entitled to release on recognizance when the state appeals. Of course, the state can argue for detention but it would then have the burden. In this case, we have placed the burden on the detainee to show why he should be released.
The state points out that the Jimmy Ryce Act has been in effect since 1999 and that the appellate rules committee has not seen fit to modify rule 9.310(b)(2). Inaction might create a useful implication if we were interpreting a statute enacted by the Legislature, but I do not think that we can ascribe the same kind of intent to a rules committee. The committee does not make the rules; it merely recommends them to the supreme court. There could be many reasons why the committee has not sought to modify the rule. Perhaps the committee never envisioned that someone would try to use it in this way. In any event, I believe that the responsibility for determining whether a rule can be constitutionally applied lies with the courts, not with the rules committee.
For these reasons, I respectfully dissent.
NOTES
[1] The petition was filed on November 13, 2001, the day before the appellee was scheduled to be released from custody on a four-year sentence.